IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BELEN CONSOLIDATED SCHOOLS,
BERNALILLO PUBLIC SCHOOLS,
CHAMA VALLEY INDEPENDENT SCHOOLS,
CLOVIS MUNICIPAL SCHOOLS, COBRE
CONSOLIDATED SCHOOLS, CUBA
INDEPENDENT SCHOOLS, FARMINGTON
MUNICIPAL SCHOOLS, GRANTS-CIBOLA
COUNTY SCHOOLS, LAS CRUCES PUBLIC
SCHOOLS, LAS VEGAS CITY PUBLIC
SCHOOLS, LOS LUNAS PUBLIC SCHOOLS,
MAGDALENA MUNICIPAL SCHOOLS, MESA
VISTA CONSOLIDATED SCHOOLS, PECOS
INDEPENDENT SCHOOLS, REGIONAL
EDUCATION COOPERATIVE VII, RIO
RANCHO PUBLIC SCHOOLS, SANTA ROSA
CONSOLIDATED SCHOOLS, SOCORRO
CONSOLIDATED SCHOOLS, SOUTHWEST
REGIONAL CENTER COOPERATIVE X,
TAOS MUNICIPAL SCHOOLS and TUCUMCARI
PUBLIC SCHOOLS,

   Plaintiffs,

vs.                     No. CIV-02-1131 MV/WWD ACE

ROBIN DOZIER OTTEN, Secretary Designate
of the New Mexico Human Services Department,
ROBERT T. MARUCA, Director of the Medical
Assistance Division, and GEORGIA CLEVERLY,
Medical Assistance Division Bureau Chief, THE
NEW MEXICO HUMAN SERVICES DEPARTMENT,
and THE MEDICAL ASSISTANCE DIVISION,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Temporary Restraining

Order, filed September 26, 2002 **[Doc. No. 18]**. The Court, having considered the motion, briefs,

relevant law and being otherwise fully informed, finds that Plaintiffs' motion is not well-taken and, accordingly, will be **DENIED.**

## BACKGROUND

The Medicaid in the Schools ("MITS") Program, which provides Medicaid-reimbursable health care services to Medicaid-eligible children in the schools, began in 1994 under the administration of the New Mexico Human Services Department ("HSD"). As the single state Medicaid agency, HSD has the authority to enter into interagency agreements with local public agencies, including school districts, to assist in the administration of its medical assistance programs. The school districts are under contract with HSD to assist in administering a portion of the Medicaid program in the schools. There are two contracts between HSD and the school districts, both of which must be in place to allow the school districts to operate an MITS Program in their schools: (1) the Joint Powers Agreement ("JPA") and (2) the Provider Participation Agreement ("PPA"). The JPA is the legal mechanism by which the school district is required to contribute the state's share for the particular medical assistance program in which it is involved, thus enabling HSD to obtain the federal matching funds for that program. The JPA also allows the school district to perform administrative activities for the single state Medicaid agency (HSD), and to be paid by Medicaid for those services. By its own terms, the JPA provides that it may be terminated by any party without cause, with proper notice. The PPA, which is required for all Medicaid providers, may be terminated by HSD with proper notice.

On August 15, 2002, HSD announced its decision to terminate the administrative claiming portion of the MITS Program, effectively eliminating the ability of the school districts to claim reimbursement for their administrative costs in providing direct medical services. HSD further

announced that it had already taken the first step in eliminating administrative claiming by terminating the individual JPAs between the school districts and HSD.  HSD then submitted new JPAs to each school district, reflecting the termination of administrative claiming under the MITS Program.  On August 23, 2002, HSD announced its final decision that any school district that did not execute and return HSD's version of the JPA would suffer revocation of its Medicaid provider number, thereby terminating the school district's right to participate in the MITS Program.

According to Defendants, in 2000, HSD conducted an extensive review of the administrative claims submitted by the MITS school districts.  In its claims review, HSD identified numerous improper administrative claiming practices in the school districts' 2000 fiscal year administrative claims and denied payment of those claims.  HSD and the school districts have since engaged in two years of litigation concerning the school districts' 2000 and 2001 administrative claims and related issues.  It was in this context, Defendants contend, that HSD decided in late June 2002 to eliminate the optional administrative claiming portion of the MITS program and to focus HSD's limited Medicaid resources on medical services that directly impact school children by adding nursing services and certain behavioral health services to the MITS program.  HSD also decided to eliminate the 5% administrative fee, which the school districts had been required to pay HSD.

Defendants contend that, in order to eliminate administrative claiming and the 5% administrative fee from the MITS program, HSD was obligated to terminate the existing JPAs and enter into new agreements.  Although the existing JPAs allow for a 30-day notice of termination, HSD gave the MITS school districts notice of 92 days.  On June 28, 2002, HSD provided notice of termination of the JPAs, effective September 30, 2002, by letter from Robert Maruca to all MITS school districts.  Enclosed with the letter was a new JPA, which reflected the elimination of

administrative claiming and the 5% administrative fee. The MITS districts were asked to sign the new JPAs and return them by August 31, 2002. Many of the plaintiffs submitted alternative language for the new JPAs. HSD incorporated some of those changes, and issued a revised JPA on August 30, 2002.

Plaintiffs have not signed or returned the revised JPAs. According to Defendants, if Plaintiffs do not sign and return the revised JPA before the expiration of the current JPA, on September 30, 2002, their Medicaid provider status will be in jeopardy, as under federal regulations and policies the school districts cannot participate as MITS providers without a valid interagency agreement in place. If there are no JPAs in place, the PPAs, which are required of all Medicaid providers, will have to be canceled. On August 30, 2002, Plaintiffs were given notice of the cancellation of the PPAs in the event that the revised JPAs were not in effect by October 1, 2002.

Plaintiffs commenced the instant action on September 6, 2002, filing a Complaint for Injunctive Relief, a Motion for Preliminary Injunction, and a Motion for Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction. On that same date, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction in the First Judicial District Court in Santa Fe ("State Case"). In the State Case, Judge James A. Hall denied the motion for a TRO.

On September 16, 2002, Defendants filed a Response to Plaintiff's Motion for Preliminary Injunction and Request for Stay of Proceedings. In their Motion, Defendants requested that this Court stay the federal court proceedings until the State Case had been heard, as it was set for hearing on September 17, 2002. Judge Hall held a hearing on the preliminary injunction filed in the State Case on September 17, 2002, and ruled from the bench, denying the preliminary injunction.

Thereafter, on September 26, 2002, Plaintiffs filed the instant motion for a TRO, seeking to enjoin Defendants from terminating the administrative portion of the MITS Program and revoking the Medicaid provider numbers of the school districts until the Court holds a hearing on Plaintiff's September 6, 2002 Motion for a Preliminary Injunction.

## STANDARD OF REVIEW

The district court may grant a temporary restraining order or a preliminary injunction if the moving party shows: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1542-43 (10th Cir. 1994) (*citing Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir.), *cert. denied*, 510 U.S. 916 (1993); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992)). "Because a [TRO or] preliminary injunction is an 'extraordinary remedy . . . the right to relief must be clear and unequivocal." *Kansas Health Care*, 31 F.3d at 1543 (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

## DISCUSSION

### A. Likelihood of Success on the Merits.

Plaintiffs contend that HSD has violated certain provisions of the Social Security Act, 42 U.S.C. §1396a *et seq.*, and certain of its implementing regulations. Specifically, Plaintiffs claim that: (1) by terminating the existing JPAs and insisting that Plaintiffs sign new JPAs which do not provide for administrative claiming, HSD has violated 42 U.S.C. §§3962a(a)(11), 1396a(a)(19) and 1396a(a)(23), and 42 C.F.R. §431.615(d)(3) and (d)(5)(iv) and (vii); and (2) by threatening to

-5-

revoke Plaintiffs' Medicaid provider numbers if Plaintiffs do not sign the new JPAs, HSD has violated 42 U.S.C. §1396n(a)(2)(A) and 42 C.F.R. §431.54(e)(3)(f). Plaintiffs bring the instant action for declaratory and injunctive relief under 42 U.S.C. §1983 to enforce these statutory and regulatory provisions.

Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983. In *Gonzaga University v. Doe*, 122 S. Ct. 2268 (2002), the Supreme Court explained the history of its jurisprudence on §1983 actions, and set forth the standard for determining whether a federal statute is enforceable through a private suit. As explained in *Gonzaga University*, in *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1 (1981), the Supreme Court rejected a claim that the Developmentally Disabled Assistance and Bill of Rights Act of 1975 conferred enforceable rights and "made clear that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by §1983." *Gonzaga Univ.*, 112 S. Ct. at 2273 (citations omitted).

Only twice since *Pennhurst* has the Supreme Court found spending legislation to give rise to enforceable rights. First, in *Wright v. City of Roanoke Redev. and Hous. Auth.*, 479 U.S. 418 (1987), the Supreme Court allowed a §1983 action by tenants to recover past overcharges under a rent-ceiling provision of the Public Housing Act. The "key to [the Supreme Court's] inquiry was that Congress spoke in terms that 'could not be clearer,' and conferred entitlements 'sufficiently specific and definite to qualify as enforceable rights under *Pennhurst*.'" *Gonzaga Univ.*, 112 S. Ct. at 2273 (citations omitted). The Supreme Court also allowed a §1983 action in *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), which was brought by health care providers to enforce a reimbursement

provision of the Medicaid Act. In *Wilder*, the statutory provision "explicitly conferred specific monetary entitlements upon the plaintiffs. Congress left no doubt of its intent for private enforcement . . . because the provision required States to pay an 'objective' monetary entitlement to individual health care providers, with no sufficient administrative means of enforcing the requirement against States that failed to comply." *Gonzaga Univ.*, 112 S. Ct. at 2274 (citations omitted).

The Supreme Court's "more recent decisions, however, have rejected attempts to infer enforceable rights from Spending Clause statutes." *Id.* at 2274. In *Suter v. Artist M.*, 503 U.S. 347 (1992), the Court held that there was no basis for parents and children to enforce against state officials the requirement of the Adoption Assistance and Child Welfare Act of 1980 that States receiving funds for adoption assistance have a plan to make reasonable efforts to keep children out of foster homes. The Supreme Court held:

> Careful examination of the language . . . does not unambiguously confer an enforceable right upon the Act's beneficiaries. The term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary in the manner [of reducing or eliminating payments].

*Gonzaga Univ.*, 122 S. Ct. at 2274 (citations omitted).

Similarly, in *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court found no basis for a suit brought by Arizona mothers under Title IV-D of the Social Security Act, which requires states receiving federal child-welfare funds to substantially comply with requirements designed to ensure timely payment of child support. The Supreme Court reasoned that "[b]ecause the provision focused on 'the aggregate services provided by the State,' rather than 'the needs of any particular person,' it conferred no individual rights and thus could not be enforced by §1983." *Gonzaga Univ.*,

122 S. Ct. at 2274 (citations omitted). In *Blessing*, the Supreme Court also articulated the following three-part test for determining whether a statute creates a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340-41 (citations omitted).

The *Gonzaga University* Court "rejected the notion" that this line of cases "permit[s] anything short of an unambiguously conferred right to support a cause of action brought under §1983." *Gonzaga Univ.*, 122 S. Ct. at 2275. Thus, after *Gonzaga University*, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under §1983 or under an implied right of action." *Id.* at 2277. Further, where a statutory provision contains "no rights-creating language," has an "aggregate, not individual, focus," and serves primarily to direct the distribution of funds, it does not create a right enforceable under §1983. *Id.* at 2279.

The Court first must determine the threshold issue of whether the statutory provisions which HSD allegedly violated create enforceable rights in Plaintiffs, thereby providing a basis for their suit under §1983. The Court will address each of Plaintiffs' claims in turn.

### 1. Claims under 42 U.S.C. §1369a(a)(11) and 42 C.F.R. §431.615(d)(3) and (d)(5)(iv) and (vii)

Section §1369a(a)(11) provides in pertinent part that a state plan for medical assistance must:

(A) provide for entering into cooperative arrangements with the State agencies responsible for administering or supervising the administration of health services and

> vocational rehabilitation services in the State looking toward maximum utilization of such services in the provision of medical assistance under the plan.

Section 431.615(d)(3) and (d)(5)(iv) and (vii) basically provide that the cooperative arrangements referred to in §1639a(a)(11) must specify the cooperative and collaborative relationships at the State level, as well as the methods for payment and reimbursement and continuous liaison between the parties.

These provisions do not explicitly confer an entitlement upon Plaintiffs. Plaintiffs are State agencies which HSD, as the single state Medicaid agency, has chosen to use to assist in administering its medical assistance programs. *See* 42 C.F.R. §431.10(e). The provisions cited by Plaintiffs mandate that the State maintain "cooperative arrangements" with such State agencies. However, the language of these provisions does not suggest that State agencies, such as Plaintiffs, are the intended beneficiaries of these provisions. These provisions contain "no rights-creating language" and have an "aggregate, not individual, focus." *Gonzaga Univ.*, 122 S. Ct. at 2279. Rather than creating a new, individual right in Plaintiffs, these provisions impose a generalized duty upon the State to enter into cooperative arrangements. This duty is too "vague and amorphous" to allow its enforcement in a private action. *Blessing*, 520 U.S. at 340. Accordingly, neither §1369a(a)(11) nor §431.615 creates a federal right that Plaintiffs may seek to enforce under §1983.

### 2. Claims under 42 U.S.C. §1396a(a)(19)

Section 1396a(a)(19) provides that a State plan for medical assistance must:

> provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

Every court to have considered the question of whether this section creates a private right of action has determined that it does not. In *Harris v. James*, 127 F.3d 993 (11th Cir. 1997), the Eleventh Circuit held that this statutory language "imposes only a generalized duty on the States -- in other words, the provision is insufficiently specific to confer any particular right upon the plaintiffs." 127 F.3d at 1010 (citing *Suter*, 503 U.S. at 363); *see also Bumpus v. Clark*, 681 F.2d 679, 683 (9th Cir. 1982), *opinion withdrawn as moot*, 702 F.2d 826 (9th Cir. 1983) ("Section 1396a(a)(19) is not the sort of specific condition for receipt of federal funds which can be said to create substantive rights in Medicaid recipients."); *Stewart v. Bernstein*, 769 F.2d 1088, 1093 (5th Cir. 1985) (citing *Bumpus* with approval); *Cook v. Hairston*, 948 F.2d 1288 (6th Cir. 1991) (unpublished disposition) ("[T]he district court did not err in finding that the [provisions] in question were not sufficiently specific and definite to permit enforcement through §1983."); *Bryson v. Shumway*, 177 F. Supp.2d 78, 90 (D. N.H. 2001) ("[P]laintiffs have no right of action under §1396a(a)(19) because that statute is too 'vague and amorphous' to confer one, under the rule of *Blessing*.")

The Supreme Court's decision in *Wilder*, which involved §1396(a)(13)(A), is not dispositive here. As the Court explained in *Jordano v. Steffen*:

> The *Wilder* Court found a substantive right, enforceable under §1983, because Congress required findings and assurances by the State that reasonable and adequate rates would be provided to health care providers. The providers were the intended beneficiaries of the provision. The statute was in the form of a congressional command, capable of enforcement, based upon a specific standard of reasonable and adequate funding. The *Wilder* Court found that federal funding was, by virtue of §1396(a)(13)(A), essentially contingent upon a state plan's assurances of compliance.
>
> The language of §1396a(a)(19) differs from the *Wilder* statute. It contains mandatory language which compels the State to balance administrative simplicity and recipient welfare. But this statute does not make allocation of federal Medicaid funding contingent upon the State's balance of these interests. Whether the State strikes the mandated balance in the administration of this complex scheme involves the weighing

of public policy considerations beyond the capacity of this Court. Further, §1396a(a)(19) provides no guidance as to the standard by which this Court could measure the State's balancing of these interests.

787 F. Supp. 886, 892-93 (D. Minn. 1992) (citations omitted).

This Court finds that, rather than creating a "new, individual right," §1396a(a)(19) sets forth a general, statutory goal for the State to follow. *Gonzaga Univ.*, 122 S. Ct. at 2277. Accordingly, "[i]ts language, even broadly construed, grants no private right to compel expenditure of state and federal Medicaid funds in the manner" in which Plaintiffs seek. *Jordano,* 787 F. Supp. at 892. Thus, §1396a(a)(19) does not create a federal right that Plaintiffs may enforce under §1983.

### 3. Claims Under 42 U.S.C. §1396a(a)(23)

The "freedom of choice" requirements set forth in Section §1396a(a)(23) provide in pertinent part that a state plan for medical assistance must provide that:

> (A) any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system, . . . a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services . . .

§1396a(a)(23).

Upon its review of the case law, the Court has found that each case addressing the issue has found that the freedom of choice provision does not confer upon a Medicaid provider a private right of enforcement. *See RX Pharmacies Plus, Inc. v. Weil*, 883 F. Supp. 549 (D. Colo. 1995); *Nutritional Support Servs., L.P. v. Miller*, 826 F. Supp. 467 (N.D. Ga. 1993).

In holding that the freedom of choice provisions were intended to protect Medicaid recipients, and do not confer any enforceable rights on Medicaid providers, the court in *RX Pharmacies Plus,*

*Inc.* explained that, as a general rule, the Medicaid statutes were intended to benefit Medicaid recipients, rather than Medicaid providers. 883 F.Supp. 549; *see also Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir.), *cert. denied*, 454 U.S. 832 (1981). Thus, while Medicaid providers have been permitted to bring actions challenging the Social Security Act, all such cases, most notably *Wilder*, have involved "reimbursement rates or payment procedures." *RX Pharmacies Plus, Inc.*, 883 F. Supp. at 553. Unlike the reimbursement provision at issue in *Wilder*, the freedom of choice provisions at issue here "do not in any way affect a provider's right to reimbursement or payment under Medicaid." *Id.*

In *Nutritional Support Servs., L.P.*, the court explained that the Supreme Court in *Wilder* made a "threshold determination that health care providers are the intended beneficiaries of the Act's reimbursement provision," focusing on "the language and purpose of the provision." *Id.* at 469 (citations omitted). The statutory provision at issue in *Wilder* is "phrased in terms benefitting health care providers and establishes a system for reimbursement of providers." *Id.* (citations omitted). In contrast to the reimbursement provision, the freedom of choice provision gives "no indication . . . that health care practitioners are given any rights." *Id.* (citations omitted). The legislative history of the freedom of choice provision "clearly focuses on the Medicaid *recipient's* right to choose the provider of his or her choice." *RX Pharmacies Plus, Inc.*, 883 F. Supp. at 554 (emphasis in original). Moreover, the Supreme Court has held that this provision creates rights in Medicaid recipients. *See O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785 (1980). It thus follows that "the purpose of the freedom of choice provision was not intended to benefit Plaintiffs." *Nutritional Support Services, L.P.*, 826 F. Supp. at 470. If §1396a(a)(23) was not intended to benefit Plaintiffs,

it certainly does not give Plaintiffs "an unambiguously conferred right to support a cause of action brought under §1983." *Gonzaga Univ.*, 122 S. Ct. at 2275.

### 4. Claims under 42 U.S.C. §1396n(a)(2)(A) and 42 C.F.R. §431.54(e)(3)(f)

Section 1396n(a)(2)(A) provides that:

(a) A state shall not be deemed to be out of compliance with the requirements of paragraphs (1), (10), or (23) of section 1396a(a) of this title solely by reason of the fact that the State . . . (2) restricts for a reasonable period of time the provider or providers from which an individual . . . can receive [medical] items or services, if -- (A) the State has found, after notice and opportunity for a hearing (in accordance with procedures established by the State), that the individual has utilized such items or services at a frequency or amount not medically necessary . . . and (B) under such restriction, individuals eligible for medical assistance for such services have reasonable access . . . to such services of adequate quality.

Section 431.54(e)(3)(f) provides for the "lock-out of providers" in relevant part as follows:

If a Medicaid agency finds that a Medicaid provider has abused the Medicaid program, the agency may restrict the provider, through suspension or otherwise, from participating in the program for a reasonable period of time. Before imposing any restriction, the agency must meet the following conditions:

(1) Give the provider notice and opportunity for a hearing, in accordance with procedures established by the agency.

Section 1396n(a)(2)(A) sets forth the circumstances in which the State will not be held in non-compliance with other provisions of the Social Security Act by reason of its restriction of a Medicaid provider from the program. While this provision includes a discussion of the State's findings made after notice and opportunity for a hearing, there is nothing in the language of the provision to suggest that Medicaid providers are the intended beneficiaries of this provision. This provision clearly seems to be directed at establishing how the State itself can remain in compliance with the Social Security Act, given conflicting directives in different sections of the statute. The focus is not on the individual

-13-

Medicaid provider, and, accordingly, there is "no rights-creating language" which could be read as conferring a private right on Plaintiffs. *Gonzaga Univ.*, 122 S. Ct. at 2279. This provision does not itself create the State's duty to provide notice and opportunity for a hearing, nor does it set forth the procedure associated with such a duty. Thus, the duty of the State to provide notice and opportunity for a hearing is too "vague and amorphous" to allow any enforcement in a private action. *Blessing*, 520 U.S. at 340.

Moreover, §1396n(a)(2)(A) appears to be limited to circumstances where a Medicaid provider has provided to a Medicaid participant medical items or services at a frequency or amount not medically necessary. This is not the case here. It strains credulity to suggest that Plaintiffs are the intended beneficiaries of this provision. Section §1396n(a)(2)(A) thus provides no basis for Plaintiffs' §1983 action.

While §431.54(e)(3)(f) does seem to confer upon a Medicaid provider the right to notice and an opportunity for a hearing before being restricted from participating in the Medicaid program, this provision does not apply to the instant case. This regulation clearly states that it applies "if a Medicaid agency finds that a Medicaid provider has abused the Medicaid program." Once a Medicaid agency has made such a finding, it must meet the conditions set forth in the regulation before restricting the Medicaid provider from the program. As Plaintiffs admit, HSD has made no finding that Plaintiffs have abused the Medicaid program. In their motion papers, Plaintiffs assert that "Defendants conditioned the 'lock-out' of the Plaintiffs, *not on a violation of Medicaid guidelines or for Plaintiffs' alleged abuse of the Medicaid Program*, but as a means to coerce the Plaintiffs to accept their unlawful termination of administrative claiming under the MITS Program." Memorandum in Support of Plaintiffs' September 26, 2002 Motion for Temporary Restraining Order

at 12 (emphasis added). Thus, by Plaintiffs' own admission, the "lock-out" provision of the federal regulations is inapplicable here. Accordingly, this provision cannot serve as a basis for Plaintiffs to bring an action under §1983.

## **CONCLUSION**

Although Plaintiffs have alleged violations of certain federal statutory and regulatory provisions, none of these provisions creates enforceable rights in Plaintiffs. Accordingly, none of these provisions provides a basis for Plaintiffs' action under §1983. Plaintiffs thus cannot prevail on the merits of their case. Because the Court finds no likelihood that Plaintiffs will prevail on the merits, the Court need not address the remaining requirements which must be shown in order to grant a temporary restraining order.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Temporary Restraining Order is **DENIED**.

Dated this 2nd day of October, 2002.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
Jacquelyn Archuleta-Staehlin, Esq.
Andre M. Sanchez, Esq.

Attorneys for Defendants:
Marsha Zenderman, Esq.